**Affirmed and Opinion filed January 7, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00735-CR
### NO. 14-12-00736-CR

---

### KENNETH RAMONE DEARBORN, II, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Cause No. 124364 & 1240365**

---

## O P I N I O N

Appellant Kenneth Dearborn was convicted in a bench trial of aggravated assault and unlawful possession of a firearm by a felon. In his first issue, appellant argues that he was egregiously harmed by the trial court's alleged failure to apply the law of justification as a defense to the charges against him. We disagree because the evidence did not fairly raise the theory that appellant's use of deadly

force was justified either to prevent the complainant's purported aggravated kidnapping of his own wife, or to prevent the complainant's alleged burglary of his own home. In his second and third issues, appellant challenges the sufficiency of the evidence supporting his convictions for aggravated assault and unlawful possession of a firearm, respectively. We reject these challenges and hold that the evidence sufficiently supported each of appellant's convictions. We therefore affirm the convictions.

## BACKGROUND

As the trial court observed, "[t]his is a tale of a boy, a girl, and a boy, which is always a bad combination." The complainant, Richard Mitchell, shared a house in Katy with his wife, Danielle Jones-Mitchell. Although the complainant was gone for extended stretches of time to work offshore, he paid the mortgage and utility bills for the house, and he had his own set of keys to the house.

On November 8, 2009, the complainant unexpectedly returned early from working offshore due to a storm in the Gulf of Mexico. The complainant called Jones-Mitchell, and she drove to Louisiana in their car to pick him up and drive him back to Katy. During the drive back, Jones-Mitchell informed the complainant that he could not return to their house that night. The complainant later discovered that while he had been working offshore, Jones-Mitchell had been cohabitating in their Katy house with appellant. The complainant admitted during appellant's trial that he was very angry when he initially learned of this situation. To ensure that he returned to his house, the complainant eventually asked Jones-Mitchell to let him drive their car. They exchanged seats, and the complainant then drove the rest of the way to their house in Katy.

The complainant also admitted that he got even angrier when, during the drive, he answered a telephone call from appellant to Jones-Mitchell. According to

2

the complainant, while they were still thirty minutes away from the house, he told appellant he had five minutes to get out. The complainant denied telling appellant anything other than he had five minutes to vacate the house. While admitting he was initially very angry, wanted to beat appellant up, and that he drove twice the speed limit at times on his way to his house, the complainant testified that Jones-Mitchell continued talking to him and he eventually calmed down and that upon arriving at his house, he "was going to let the dude call his ride and go."

According to the complainant, by the time they arrived at the house, he and his wife were not arguing, he had calmed down, and they walked together to the front door of the house. When Jones-Mitchell put her key in the front door lock, appellant fired a shotgun through the door, hitting the complainant.[1] The complainant fled to the entrance of his neighbor's house, where he collapsed. Accompanied by Jones-Mitchell, the complainant was later taken by ambulance to the hospital, where he was treated and eventually released.

After his arrest, appellant gave a brief, voluntary statement to the police. According to that videotaped statement, Jones-Mitchell talked with appellant over the phone during the drive, and she told appellant that the complainant had hit her. Appellant said he heard arguing over the phone and heard complainant ask Jones-Mitchell where a shotgun was. Appellant also told the police that the complainant answered one of his calls to Jones-Mitchell and told appellant he had better be gone when he reached the house. Appellant told the police he wanted to leave the house but had no transportation. Appellant said he was scared and moved a shotgun close to the front door. Appellant said he heard a car pull up to the house and then a light tapping sound at the front door like there was a key at the door.

---

[1] In his statement to police, appellant indicated that some words may have been exchanged through the door immediately prior to the shooting.

Scared, appellant picked up the shotgun in both hands and it then accidently fired through the front door. Immediately after firing the shotgun through the front door, appellant placed the shotgun and spent shell casings on a table in the living room, washed his hands, and then went outside to check on the complainant. Appellant told Jones-Mitchell and the wounded complainant that he accidentally fired the shotgun. Appellant later told the deputy sheriff who responded to the scene that he accidentally shot the complainant.

At his bench trial, appellant did not testify, but his videotaped statement to police was introduced into evidence as an exhibit. Jones-Mitchell also did not testify. Only three witnesses testified during appellant's trial: the complainant; the deputy sheriff who responded to the shooting; and a firearms examiner from the Harris County Sheriff's Office. The firearms examiner testified that it was unlikely the shotgun could fire accidently. Instead, she testified the trigger is "going to have to be directly pulled, not just a slight tap is going to cause it to go off."

At the conclusion of the guilt-innocence phase of the bench trial, the court found appellant guilty of both charges. Then, at the conclusion of the sentencing phase and before imposing appellant's punishment, the trial court stated:

> Now, I don't know what happened in the [prior felony conviction], but I do know in this situation that the choice you made was - - rather than leaving and completely [defusing] the situation, you made the choice to stay, you made the choice to arm yourself.
>
> . . . . I can understand you being afraid in that situation. But, again, that fear could have been productive. You could have left and not been in that situation.

The trial court then sentenced appellant to 25 years in prison for the aggravated assault and 10 years in prison for possessing the firearm. This appeal followed.

4

As mentioned above, appellant brings three issues on appeal. Appellant's second and third issues contend he should be acquitted because insufficient evidence supports his convictions, so we address those issues first.

## I. The evidence is sufficient to support appellant's convictions for both aggravated assault and unlawful possession of a firearm.

In this appeal, appellant does not dispute that he fired the shotgun blast that struck the complainant. He also does not dispute that he had a prior felony conviction or that he possessed the shotgun, at least for a short while. Instead, in both his second and third issues, appellant contends he presented evidence establishing as a matter of law that he was justified in possessing the shotgun, firing it through the front door of the complainant's house, and wounding the complainant in the chest to prevent (1) the aggravated kidnapping of Jones-Mitchell, and (2) the complainant from unlawfully and forcibly entering the residence to assault him with deadly force. *See* Tex. Penal Code Ann. §§ 9.31–9.32 (West 2011). Appellant argues that once a criminal defendant presents evidence raising a justification defense, the State must present evidence rebutting that defense. According to appellant, because the State failed to refute his self-defense claim, the evidence is insufficient to support his convictions. We disagree.

### A. The applicable law and standard of review.

To obtain a conviction for aggravated assault, the State must prove beyond a reasonable doubt that the accused intentionally, knowingly, or recklessly caused bodily injury to another while using or exhibiting a deadly weapon. *See id.* §§ 22.01(a)(1), 22.02(a)(2) (West 2011). A deadly weapon includes "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." *See id.* § 1.07(a)(17)(A) (West 2011).

To convict appellant of unlawful possession of a firearm by a felon, the State was required to prove that appellant, having been previously convicted of a felony, possessed a firearm before the fifth anniversary of his release from confinement. *See id.* § 46.04(a)(1) (West 2011).

It is a defense to prosecution if a person's conduct is justified by Chapter 9 of the Texas Penal Code. Tex. Penal Code Ann. § 9.02 (West 2011). Under Chapter 9, a person generally is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against another's use or attempted use of unlawful force. *Id.* § 9.31(a). When the force in question is deadly, as the shotgun blast was here,[2] the person is justified in using such force in self-defense if the above test is met and the person reasonably believes that deadly force is immediately necessary either (1) to protect himself against the other's use or attempted use of unlawful deadly force; or (2) to prevent the other's imminent commission of, among other things, aggravated kidnapping. *Id.* § 9.32(a). The person's belief in the necessity of deadly force is presumptively reasonable if certain requirements are met, including that the person has reason to believe that the other unlawfully and with force entered (or was attempting to enter) the person's occupied habitation. *Id.* § 9.32(b). Similarly, a person is justified in using deadly force in defense of property if certain requirements are met, including that the person reasonably believes such force is immediately necessary to prevent the other's imminent commission of burglary. *Id.* § 9.42.

There is authority suggesting that self-defense may also apply to a charge for unlawful possession of a firearm by a felon. *See Vasquez v. State*, 830 S.W.2d

---

[2] "Deadly force" is force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury. Tex. Penal Code Ann. § 9.01(3).

948, 950 (Tex. Crim. App. 1992) (holding that necessity, another Chapter 9 defense, applies to possession charge).  We need not decide that issue to dispose of this appeal, however, because we conclude that the evidence supported the rejection of any such defense as explained below.

The defendant has the initial burden of production and must bring forth some evidence to support the defense.  *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Hernandez v. State*, 309 S.W.3d 661, 665 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).  Once the evidence is produced, the State bears the burden of persuasion to disprove the defense.  *Id.*  This burden does not require the production of additional evidence rebutting self-defense; it requires the State to prove its case beyond a reasonable doubt.  *Id.*  When the trier of fact finds the defendant guilty, there is an implicit finding rejecting the defendant's self-defense theory.  *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991); *Hernandez*, 309 S.W.3d at 665.

When an appellant challenges the legal sufficiency of the evidence to support rejection of a defense such as self-defense, the question is not "whether the State presented evidence which refuted appellant's self-defense [evidence]." *Saxton*, 804 S.W.2d at 914.  Rather, we examine all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found beyond a reasonable doubt (1) the essential elements of the alleged offenses, and (2) against appellant on the self-defense issue.  *Brooks v. State*, 323 S.W.3d 893, 899, 912 (Tex. Crim. App. 2010); *Saxton*, 804 S.W.2d at 914; *Hernandez*, 309 S.W.3d at 665.[3]  The trial court, as the trier of fact in a bench trial,

_____

[3] In reviewing the sufficiency of the evidence to support a conviction in a bench trial, we apply a standard analogous to the "hypothetically correct jury charge" standard, which includes the statutory elements of the offense as modified by the charging instrument.  *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim.

7

is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995). Therefore, we presume the trier of fact resolved any conflicting inferences and issues of credibility in favor of the judgment. *Id.* The trier of fact is free to accept or reject defensive evidence on the issue of self-defense. *Saxton*, 804 S.W.2d at 914.

> **B.** **The evidence is legally sufficient to support appellant's aggravated assault conviction and the rejection of appellant's justification defense.**

As noted above, an aggravated assault occurs when one uses a deadly weapon to intentionally, knowingly, or recklessly cause bodily injury to another. Tex. Penal Code Ann. § 22.02(a). The undisputed evidence at trial showed that appellant shot complainant with a shotgun, and appellant did not contest that fact. Instead, appellant claimed he shot the complainant accidentally. The firearms examiner testified, however, that the shotgun appellant used to shoot the complainant required a direct trigger pull of 5.5 to 6 pounds of pressure to discharge, and would have been unlikely to discharge accidentally. In addition, there was evidence that appellant—who claimed to be scared following his phone

---

App. 1997); *Wheaton v. State*, 129 S.W.3d 267, 274–75 (Tex. App.—Corpus Christi 2004, no pet.) (Castillo, J., concurring in result). Non-precedential decisions from some courts of appeals suggest that a justification defense is included in this standard, at least where the defense was requested at trial and raised by the evidence. *Compare Pruiett v. State*, No. 05-12-00131-CR, 2013 WL 1277861, at *2 (Tex. App.—Dallas Feb. 25, 2013, pet. ref'd) (mem. op., not designated for publication) (excluding self-defense because not requested at trial); *and Brown v. State*, No. 10-07-00279-CR, 2010 WL 138331, at *1 n.1, *3 (Tex. App.—Waco Jan. 13, 2010, pet. dism'd) (mem. op., not designated for publication) (excluding self-defense because not raised by the evidence); *with Lee v. State*, No. 13-09-00550-CR, 2010 WL 1919504, at *4–5 (Tex. App.—Corpus Christi may 13, 2010, no pet.) (mem. op., not designated for publication) (including self-defense where jury received instruction on it and evidence was disputed). In this case, even if a justification defense were included (an issue we discuss in Part II below), a rational jury could have rejected it as we explain next. Thus, appellant's argument that he proved the defense as a matter of law fails.

conversations with the complainant and Jones-Mitchell—placed the shotgun by the door to the house. Based on this evidence, a rational fact-finder could have found beyond a reasonable doubt that appellant acted at least recklessly.

On appeal, appellant contends he proved as a matter of law that he was justified in shooting the complainant because doing so was necessary to prevent the complainant from kidnapping Jones-Mitchell, burglarizing the house, and assaulting him with deadly force. Regarding kidnapping, appellant asserts it is uncontested that the complainant "committed the act of kidnapping by commandeering . . . Jones-Mitchell's car and by forcing her to let [the complainant] into her house so he could confront [appellant]." With respect to burglary, appellant asserts that it was "not contradicted that the house was Jones-Mitchell's or that she had a right to exclude [the complainant] or permit [appellant] to stay at her house." And as to preventing a deadly assault, appellant asserts "it is not contradicted that [appellant] overheard [the complainant] and Jones-Mitchell arguing or that he heard [the complainant] talking about the shotgun."

We disagree with appellant's view of the evidence. When evaluating the sufficiency of the evidence, we must presume the trier of fact resolved any conflicts in the evidence in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 912. Having searched the record, we conclude that a rational trier of fact could have found beyond a reasonable doubt against appellant's arguments that the complainant (1) committed an aggravated kidnapping of Jones-Mitchell;[4] and (2) was attempting to commit burglary because

---

[4] A person commits the offense of aggravated kidnapping if he intentionally or knowingly abducts another person with the intent to facilitate the commission of a felony. Tex. Penal Code Ann. § 20.04(a)(3) (West 2011). The Penal Code defines "abduct" as restraining a person with the intent to prevent his liberation by either (1) secreting or holding him in a location where he is not likely to be found, or (2) using or threatening to use deadly force. *Id.* § 20.01(2). Appellant introduced no evidence to support his putative belief that the complainant restrained

9

he lacked an equal right to enter the house along with Jones-Mitchell that evening, and exerted force on Jones-Mitchell to gain entry into the house.[5] Indeed, as we explain in Part II below, the evidence does not fairly raise either argument.

To the extent appellant relies on his statement to police to support his arguments, we conclude it does not establish that the complainant kidnapped Jones-Mitchell or was attempting to commit burglary immediately prior to appellant firing the shotgun into the front door. The trial court, as the trier of fact, could have chosen to disbelieve the entirety of his statement. Therefore, appellant's statement does not conclusively prove a claim of self-defense. *See Denman v. State*, 193 S.W.3d 129, 132–33 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (stating that a defendant's testimony, by itself, does not prove a claim of self-defense).

We also conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant shot complainant and was not justified in doing so to protect himself against the use or attempted use of unlawful deadly force by the complainant. Appellant's statement indicates that he was afraid of the complainant, having overheard the complainant arguing with Jones-Mitchell and discussing a shotgun, and having been told by the complainant to get out of the house. The complainant testified, however, that he had calmed down by the time he reached his house, and that he intended to let appellant "call his ride and go."

Viewing the evidence summarized above in the light most favorable to the verdict, we conclude that a rational trier of fact could have found appellant guilty

---

Jones-Mitchell, or anyone else, with the intent to prevent his or her liberation. *See* Part II.A., *infra*.

[5] The gravamen of the offense of burglary is entry of a habitation without the effective consent of the owner with the intent to commit a felony, theft, or an assault. Tex. Penal Code Ann. § 30.02(a) (West 2011).

of aggravated assault beyond a reasonable doubt by choosing to believe the evidence favoring conviction and by choosing to disbelieve any evidence favoring self-defense. *Smith v. State*, 352 S.W.3d 55, 63 (Tex. App.—Fort Worth 2011, no pet.).

Appellant also contends in his second issue that the trial court's previously-quoted statement during the punishment phase of the trial—noting that appellant chose to remain at the house and arm himself rather than leave and defuse the situation—establishes "that the trial court's rejection of [appellant's] justification was based entirely off the flawed assumption that he had a duty to retreat." *See* Tex. Penal Code Ann. § 9.32(c) (providing that in certain circumstances, a person who has a right to be present at the location where the deadly force is used is not required to retreat before using deadly force).

We disagree that the trial court's comment establishes that it considered appellant's alleged failure to retreat in violation of Penal Code section 9.32(c). There is a "presumption of the regularity of the judgment of conviction and the proceedings absent a showing to the contrary," and "the burden is on the defendant to overcome the presumption." *Ex Parte Wilson*, 716 S.W.2d 953, 956 (Tex. Crim. App. 1986). Appellant failed to overcome this presumption because the comment came during the punishment phase of appellant's trial, when the trier of fact can consider any matter the trial court deems relevant to sentencing.[6] In addition, because we have already determined that a rational fact-finder could have rejected

---

[6] *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1) (West Supp. 2013) ("Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to . . . the circumstances of the offense for which he is being tried . . . ."); *see also Sanders v. State*, 25 S.W.3d 854, 857 (Tex. App.—Houston [14th Dist.] 2000, *pet dism'd, improvidently granted*, 56 S.W.3d 52 (Tex. Crim. App. 2001) ("The admissibility of evidence at the punishment stage of non-capital felony offenses is largely a function of policy rather than relevancy because there are no discrete factual issues to be determined.").

appellant's justification defense, there was no statutory reason prohibiting the trial court from considering—at any stage of the trial—appellant's failure to leave the house prior to the complainant's arrival.

Having addressed and rejected all arguments raised in appellant's second issue, we overrule that issue.

### C. The evidence is legally sufficient to support appellant's conviction for unlawful possession of a firearm and the trial court's rejection of appellant's defenses.

We turn next to appellant's challenge to the sufficiency of the evidence supporting his conviction for the offense of unlawful possession of a firearm, the elements of which are recited above. Here, appellant does not dispute that he possessed the shotgun at issue for at least a brief period of time. In addition, undisputed evidence shows that appellant was previously convicted of a felony, confined for the offense, and released on November 28, 2008. We have already determined that sufficient evidence supports appellant's aggravated assault conviction for shooting complainant on November 8, 2009—a date less than five years after his release. Accordingly, a rational fact-finder could have found beyond a reasonable doubt that appellant committed the offense of unlawful possession of a firearm.

Appellant contends he should be acquitted, however, because he established as a matter of law the defenses of justification as well as necessity. Appellant's justification argument fails for the same reasons explained above with respect to his aggravated assault conviction. As to necessity, appellant raised the defense in the trial court and argues on appeal that it applies because he needed the shotgun to defend himself against the complainant and to stop the complainant from kidnapping Jones-Mitchell.

To raise the defense of necessity, a defendant must admit that he committed the offense charged and then offer the alleged necessity as a justification for his conduct. *Ford v. State*, 112 S.W.3d 788, 793 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Necessity is a statutory defense that exonerates a person's otherwise illegal conduct. *Id.* Conduct is justified by necessity if: (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear. *Id.* (citing Tex. Penal Code Ann. § 9.22).

Having already determined that the evidence allowed a rational trier of fact to find beyond a reasonable doubt that the complainant was not kidnapping Jones-Mitchell and that shooting the complainant was not immediately necessary for appellant's protection, we conclude appellant's necessity defense likewise founders on the first element: viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that taking possession of the shotgun was not immediately necessary to avoid imminent harm. Accordingly, appellant failed to establish a necessity defense as a matter of law.[7] We overrule appellant's third issue.

**II.     Because justification defenses were not fairly raised by the evidence, the trial court was not obligated to consider them.**

Citing *Almanza v. State*, appellant contends in his first issue that he was

---

[7] Appellant also argues in his third issue that the trial court erroneously decided appellant had a duty to retreat, which impacted the trial court's guilty finding on the unlawful possession of a firearm charge. We reject that contention here for the same reasons given in overruling appellant's second issue.

egregiously harmed when the trial court failed to consider a justification defense because, in his view, it was fairly raised by the evidence. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).[8] According to appellant, this alleged error entitles him to a new trial. We disagree.

Neither party cites any cases addressing the question whether the *Almanza* standard applies to a bench trial. Nor do the parties address the applicability to a bench trial of the principle that a trial court has no duty to instruct the jury *sua sponte* on self-defense, even if it is raised by the evidence.[9] *See Barrera v. State*, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998); *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998). We need not resolve these questions, however, because we conclude a justification defense was not fairly raised by the evidence in this case and, to the extent it was, the trial court presumptively considered and rejected it.

### A. The evidence did not fairly raise the defense of justification to prevent an aggravated kidnapping.

Appellant argues the evidence fairly raised the theory that his use of deadly force against the complainant was justified in order to prevent the complainant's aggravated kidnapping of his wife. *See* Tex. Penal Code Ann. § 9.32(a)(2). For such a justification defense to be fairly raised by the evidence, however, there must be evidence that an aggravated kidnapping was afoot. *See Halbert v. State*, 881 S.W.2d 121, 124 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (stating that to be entitled to self-defense instruction, defendant must present evidence on each

---

[8] Appellant also relies on *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001), which held that in a jury trial, a requested justification defense must be submitted if fairly raised by the evidence.

[9] Here, appellant's trial counsel affirmatively disavowed a self-defense theory, telling the trial court that he was relying instead on an accident theory for the aggravated assault charge and a necessity defense to the unlawful possession of a firearm charge.

statutory condition); *see also Holmes v. State*, 830 S.W.2d 263, 265–66 (Tex. App.—Texarkana 1992, no pet.) (holding defendant was not entitled to self-defense instruction because there was no evidence victim was attempting to commit offense listed in Penal Code section 9.32). In this case, there was no such evidence.

A necessary element of the offense of aggravated kidnapping is that the perpetrator intentionally or knowingly abducts another person. Tex. Penal Code Ann. § 20.04(a). Under the Penal Code, "abduct" means to restrain a person with intent to prevent her liberation, either by secreting or holding her in a place where she is not likely to be found, or by using or threatening to use deadly force. *Id.* § 20.01(2). "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty. *Id.* § 20.01(1); s*ee also West v. State*, 406 S.W.3d 748, 757-58 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (restraint shown by testimony that defendant repeatedly grabbed victim by the hand and arm, pinned her down by her wrists during intercourse, and placed and seated her in his car); *Jenkins v. State*, 248 S.W.3d 291, 294–95 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (restraint demonstrated by testimony that defendant forced himself into victim's apartment, brandished gun, refused to leave after victim asked him to, and fired his gun three times while refusing to let victims leave apartment); *Megas v. State*, 68 S.W.3d 234, 239 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (restraint established by testimony showing that defendant kicked victim to prevent her from leaving vehicle, prevented her from running away, and dragged her back into vehicle, in addition to medical evidence that victim's wounds were defensive).

The record is bare of any evidence that even suggests the complainant restrained Jones-Mitchell at any time during their travel from Louisiana to Katy.

15

Although appellant claimed in his statement to police that Jones-Mitchell told him over the phone that the complainant hit her during their drive, such evidence— even if accepted as true—would not by itself indicate that the complainant restrained Jones-Mitchell.  There is also no evidence in the record that during the sequence of events preceding the shooting, appellant had reason to believe that the complainant restricted Jones-Mitchell's movement so as to interfere substantially with her liberty, nor that the complainant intended to hide Jones-Mitchell or threaten her life.  By all accounts, Jones-Mitchell's movement was unrestricted and her actions voluntary during the sequence of events leading up to the shooting and thereafter, when she accompanied the complainant to the door of the house and later to the hospital.  Accordingly, we hold that the evidence did not fairly raise a theory that the appellant's aggravated assault or unlawful possession of a firearm were justified in order to prevent aggravated kidnapping.

**B.      The evidence did not fairly raise the defense of justification to prevent a burglary by the complainant.**

Appellant also claims his use of deadly force against the complainant was justified because the complainant's actions constituted a burglary or an unlawful, forcible home invasion.  Tex. Penal Code Ann. § 9.32(b)(1)(A) (deadly force presumptively reasonable if certain requirements met, including that person has reason to believe other was attempting to enter person's occupied habitation unlawfully and with force); *id.* § 9.42 (addressing when person may use deadly force to prevent other's imminent commission of burglary); *id.* § 30.02(a) (burglary committed when a person enters a habitation without consent of the owner and intends to commit or attempts to commit an assault).  In order for the evidence to fairly raise such a justification theory, there must be evidence that the complainant was committing or attempting to commit a burglary.

16

There is no such evidence here. The record is bare of evidence that at the time he attempted to enter his own home, the complainant lacked the right to do so. Rather, the evidence shows that the complainant merely approached the front door of his home, where he was waiting for his wife to unlock the door when appellant fired a shotgun blast through the door. Furthermore, by voluntarily attempting to unlock the door for the complainant, Jones-Mitchell's actions do not indicate a lack of consent to his entry into their home. Accordingly, we hold that the evidence did not fairly raise the theory that appellant's aggravated assault and unlawful possession of a firearm were justified in order to prevent a burglary. *See Land v. State*, 943 S.W.2d 144, 147 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (stating that justification defense not available when not fairly raised by the evidence).

## C. The evidence did not fairly raise the defense of justification to prevent complainant's use of unlawful deadly force.

Finally, appellant argues the evidence fairly raised the theory that shooting the complainant was immediately necessary to protect himself against the complainant's use or attempted use of unlawful deadly force—that is, force capable of causing at least serious bodily injury. *See* Tex. Penal Code Ann. §§ 9.01(3), 9.32(a)(2)(A). We disagree because there is no evidence that appellant reasonably believed the complainant would use or attempt to use deadly force against him. While appellant had a shotgun, there is no evidence that the complainant was armed with anything other than his fists, and courts have not treated blows with fists as deadly force. *See e.g.*, *Bundy v. State*, 280 S.W.3d 425, 435 (Tex. App.—Fort Worth 2009, pet. ref'd); *Starks v. State*, 127 S.W.3d 127, 132–33 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd); *Ogas v. State*, 655 S.W.2d 322, 324 (Tex. App.—Amarillo 1983, no pet.).

17

Yet even if the evidence had fairly raised a justification defense of protection against deadly force, appellant has shown no error in his conviction requiring a new trial. In a bench trial, we presume that the court correctly applies the law to the evidence, including defensive theories fairly raised by the evidence.[10] Appellant does not point to any evidence in the record that contradicts this presumption, nor have we found any in our examination of the record. As explained in Part I.B. above, there was sufficient evidence for the court as fact-finder to find beyond a reasonable doubt against a justification defense of protection against deadly force. We therefore overrule appellant's first issue.

## CONCLUSION

Having overruled each of appellant's issues on appeal, we affirm the trial court's judgment.

/s/       J. Brett Busby
Justice

Panel consists of Justices Boyce, Jamison, and Busby.

Publish — Tex. R. App. P. 47.2(b).

---

[10] *See Ex Parte Jackson*, 911 S.W.2d 230, 234 (Tex. App.—Houston [14th Dist.] 1995, no pet.); *Coonradt v. State*, 846 S.W.2d 874, 876 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd); *cf. Ferrel*, 55 S.W.3d at 591 (holding defendant is entitled to instruction on self-defense if raised by the evidence).